# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| TERRY WALTER, | : | Civil No. 4:12-CV-346 |
| --- | --- | --- |
| Plaintiff | : | (Judge Jones) |
| v. | : | (Magistrate Judge Carlson) |
| TRAVELERS PERSONAL INSURANCE COMPANY, | : | |
| Defendant | : | |

## MEMORANDUM OPINION AND ORDER

**I.  INTRODUCTION**

More than five years ago, the plaintiff in this action, Terry Walter, sustained severe crushing injuries to his pelvis, leg, penis, and ureter after he was run over by a rollback truck that was apparently in the process of being repossessed by its owner who had previously permitted Terry to borrow and use the vehicle. On the day of the incident, Terry, who had the rollback at a work location, noticed that the truck was being driven away from a job site; it appears that Terry believed the vehicle was being stolen, and may have given chase. During the course of this incident, Terry was run over by the truck, resulting in substantial personal injuries. The crushing injuries that the plaintiff suffered necessitated surgery at the time, and may require additional surgeries in the future.

The plaintiff submitted a claim for insurance benefits under a policy with the defendant, Travelers Personal Insurance Company, which had applicable policy limits of $100,000. To date, despite the passage of years since Walter suffered these crushing injuries, Travelers has refused to tender the policy limits to Walter, or apparently to make any payment at all on the plaintiff's claim, thus resulting in the filing of this lawsuit on February 22, 2012.

Since the filing of the lawsuit, the litigation has proceeded in a halting fashion, and approximately 11 months after the action commenced, the case was referred to the undersigned to address a discovery dispute that had arisen. Specifically, the plaintiff sought to compel the defendant to produce documents in response to a number of discovery requests, to which the defendant had interposed either the attorney-client privilege or the work-product doctrine as a defense to production.

The court convened a telephone conference with the parties on January 28, 2013, and after hearing informal argument, directed the parties to file supplemental briefs outlining their respective positions. Since the referral of this matter, the defendant has produced another 150 pages of documents that were previously being withheld, but the underlying discovery conflict remains unresolved.[1] In addition to

---

[1] In fact, the parties have recently notified the court that additional discovery disputes have arisen or remain, including a new disagreement on whether the defendant should be required to produced its claims processing

filing a brief in support of its privilege assertions, the defendant has submitted the withheld documents to the court for *in camera* review.

We have reviewed the parties' briefs, and the approximately one-inch stack of disputed documents that the defendant submitted *in camera*. Upon careful consideration, we conclude that the defendant's assertion of the attorney-client privilege or the work-product doctrine to withhold these responsive documents was warranted and should be upheld.

Although we will affirm the defendant's decision to withhold the reserved documents from production, we note that our review of these materials has induced some concern that the handling of this particular insurance dispute has by this time taken more than five years to conclude. Our concerns are heightened by the fact that, while the parties have extensively contested procedural issues two immutable facts seem clear: The plaintiff sustained apparently severe and enduring injuries in this five year old incident, and the policy limits on the contested insurance policy are relatively modest. Both of these immutable facts would seem to strongly caution in favor of a prompt and mediated resolution of this matter, rather than call for further protracted procedural litigation.

---

manual, and regarding the defendant's responses to interrogatories. The court will address these latest disputes separately.

We, therefore, take this opportunity to urge the parties to re-focus on the fundamental substantive issues presented in the insurance claim and this litigation, commit to minimizing arguments over the discovery process, and consider the mediation and settlement services offered by the court to litigants, since such periodic procedural disputes do little other than further delay the resolution of this matter that has now gone unresolved more than half a decade after the plaintiff undisputedly sustained life altering injuries.

## II. DISCUSSION

### A. The Legal Framework: Attorney-Client Privilege and Attorney Work-Product

As noted above, the defendant has withheld a number of potentially responsive documents from production to the plaintiff on the grounds that the documents contain communications protected from disclosure by the attorney-client privilege, or otherwise constitute protected attorney work-product. Below we review each of these evidentiary privileges or bases for non-disclosure before applying them to the documents submitted for *in camera* review.

The United States Court of Appeals for the Third Circuit has summarized the purposes of, and distinctions between, the attorney-client privilege and the work-

product doctrine, and the importance of limiting recognition of evidentiary privileges when necessary to achieve their purposes, as follows:

> Though they operate to protect information from discovery, the work-product doctrine and the attorney-client privilege serve different purposes. The purpose behind the attorney-client privilege is "'to encourage clients to make full disclosure of facts to counsel so that he may properly, competently, and ethically carry out his representation. The ultimate aim is to promote the proper administration of justice.'" In re Impounded, 241 F.3d 308, 316 (3d Cir. 2001) (quoting In re Grand Jury Proceedings, 604 F.2d 798, 802 (3d Cir. 1979)). The work-product doctrine, by contrast, "promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." Westinghouse Elec. Corp. v. Republic of the Phil., 951 F.2d 1414, 1428 (3d Cir. 1991) (citations omitted).
>
> Though evidentiary privileges have important purposes, their recognition may result in the withholding of relevant information and so may obstruct the search for truth. Indeed, the protections are effective only if they shield relevant evidence and thus they necessarily obstruct the search for the truth at a trial at which they are recognized either implicitly or explicitly. Consequently, privileges should be recognized only when necessary to achieve their respective purposes. See Fisher v. United States, 425 U.S. 391, 403 (1976).

In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011). With this preliminary summary, we turn to consideration of the attorney-client privilege and work-product doctrine.

1. **The Attorney-Client Privilege**

The attorney-client privilege is meant to facilitate "full and frank communication between attorneys and their clients." Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007). The privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn v. United States 449 U.S. 383, 389 (1981). The privilege "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" In re Teleglobe Communications Corp., 493 F.3d 345, 359 (3d Cir. 2007) (quoting the Restatement (Third) of the Law Governing Lawyers § 68 (2000)). Thus, the privilege reaches "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." Fisher v. United States, 425 U.S. 391, 403 (1976); see also In re Ford Motor Co., 110 F.3d 954, 965 n.9 (3d Cir. 1997) (communication made by client and an attorney are privileged if made "for the purpose of securing legal advice."); United States v. Amerada Hess Corp., 619 F.2d 980, 986 (3d Cir. 1980).

The privilege applies both to information that the client provides to the lawyer for purposes of obtaining legal advice, as well as to the advice the attorney furnishes

to the client. To this end, the Supreme Court has explained that "the privilege exists to protect not only the giving of professional advice those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn, 449 U.S. at 390. However, the privilege extends only to the disclosure of the communications, and does not extend to disclosure of the underlying facts conveyed in those communications. Id. at 385.

While recognizing the value served by the privilege, courts must also be mindful that the privilege obstructs the truth-finding process and should, therefore, be "applied only where necessary to achieve its purpose." Wachtel, 482 F.3d at 231; see also Westinghouse Elec. Corp., 951 F.2d at 1423. Therefore, because the purpose of the privilege is to protect and promote the "dissemination of sound legal advice," it applies only to communication conveying advice that is legal in nature, as opposed to where the lawyer is providing non-legal, business advice. Wachtel, 482 F.2d at 231; see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc., 152 F.R.D. 132, 137 (N.D. Ill. 1993) (stating that the privilege is inapplicable where the legal advice is incidental to business advice); Hardy v. New York News, Inc., 114 F.R.D. 633, 643 (S.D.N.Y. 1987) ("The attorney-client privilege is triggered only by a client's request for legal, as contrasted with business advice . . . .").

Federal courts are further required to assess the application of the privilege on a case-by-case basis. Thus, "Rule 501 [of the Federal Rules of Evidence] requires the federal courts, in determining the nature and scope of an evidentiary privilege, to engage in the sort of case-by-case analysis that is central to common-law adjudication." Id. at 230; see also Upjohn, 449 U.S. at 386, 396-97; In re Processed Egg Prods. Antitrust Litig., MDL No. 2002, 08-md-2002, 2011 U.S. Dist. LEXIS 120708, at *10-11 (E.D. Pa. Oct. 19, 2011). In addition, the party asserting the privilege bears the burden of providing that it applies to the communication at issue. In re Grand Jury, 603 F.2d 469, 474 (3d Cir. 1979).

### 2. The Work-Product Doctrine

The work-product doctrine is embodied within Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial" unless otherwise discoverable or a party shows substantial need for the material. Fed. R. Civ. P. 26(b)(3). The doctrine is, in essence, a recognition that a lawyer requires a "certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Hickman v. Taylor, 329 U.S. 495, 511 (1947).

The doctrine thus is intended "to protect material prepared by an attorney acting for his client in anticipation of litigation." United States v. Rockwell Int'l, 897

F.2d 1255, 1265 (3d Cir. 1990); see also United States v. Nobles, 422 U.S. 225, 238 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."). The doctrine does not extend to protect documents that were prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes.'" Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir.1993) (quoting Fed. R. Civ. P. 26(b)(3) advisory committee note).

In order for the doctrine to apply, Rule 26(b)(3) requires "that the material be prepared in anticipation of some litigation, not necessarily in anticipation of the particular litigation in which it is being sought." In re Ford Motor Co., 110 F.3d at 967 (emphasis omitted). It is not necessary that litigation has been commenced or even threatened before a document can be found to have been prepared in anticipation of litigation. See In re Processed Egg Prods. Antitrust Litig., MDL No. 2002, 08-md-2002, 2011 U.S. Dist. LEXIS 120708, at *16 (E.D. Pa. Oct. 19, 2011) (citing Hydramar, Inc. v. Gen. Dynamics Corp., 115 F.R.D. 147, 150 n.3 (E.D. Pa. 1986)). However, documents will come within the scope of the work-product doctrine only where the documents were prepared primarily in anticipation of future litigation. See

9

In re Diet Drugs Prods. Liability Litig., MDL No. 1203, 2001 U.S. Dist. LEXIS 5494, 2001 WL 34133955, at *5 (E.D. Pa. Apr. 19, 2001).

    **B.    Application of the Law to the Documents at Issue**

        **1.    Defendant's Privilege Log is Adequate and the Documents Identified Therein May Be Withheld on the Basis of the Attorney-Client Privilege or the Work-Product Doctrine.**

We have undertaken a careful review of the more than 100 documents – primarily email communication and memoranda – that comprise the materials identified on the defendant's privilege log. Although the plaintiff complains generally about the sufficiency of the descriptions of each of the documents set forth on the log, and although he urges the court to order the production of these documents on the grounds that they have not been sufficiently described in accordance with case law developed outside of the Third Circuit, we disagree.

As a threshold matter, since we have actually examined each of the documents that have been withheld, we are in a position to determine whether or not any of the privileges or bases for withholding the documents from production are, in fact, applicable. Upon review of these materials, we conclude that each document has been properly withheld either as privileged or, in other cases, because it constitutes attorney work-product and, in many cases, because both defenses to disclosure apply. Given this finding, we do not find it necessary or relevant to examine whether the

privilege log itself was adequate or conformed with the privilege logs that were at issue in other discovery disputes decided by other courts, as the plaintiff suggests.

However, as a general matter, we disagree with the plaintiff that the privilege log is insufficient or improperly vague, and we do not agree with the plaintiff that the descriptions of the withheld documents were plainly inadequate. The log identifies the authors and recipients of the various documents, and the date they were created; the documents are briefly and generally identified (e.g., email, deposition report, letter, uninsured motorist worksheet); and the type of privileges being asserted are set out in the log. More importantly, review of the documents themselves supports the defendant's stated reasons for withholding the documents from production as either privileged communications or documents that fall within the category of protected attorney work-product. In short, we find that the documents identified on the privilege log that have been withheld were properly withheld on the basis of either or both the attorney-client privilege or the attorney work-product doctrine.

We also disagree with the plaintiff that a number of the withheld documents should be ordered produced because the coverage counsel in this case was, in the plaintiff's view, really acting as a claims adjuster and not as counsel to the insurer. As noted above, upon review of the documents themselves in their entirety – and not only isolated selections of certain correspondence – we are satisfied that coverage

counsel was, in fact, serving the client in an attorney-client capacity, and not in some other function such as a business advisor or claims adjuster. We also agree with the plaintiff that merely because an attorney may have, at other times, performed non-legal functions, or had communications with the defendant's employees or agents outside of his capacity as an attorney, that the defendant has somehow waived or relinquished the right to withhold all communications with that lawyer on the basis of the attorney-client privilege. Again, the documents that were withheld, and which we have reviewed in camera, constitute documents to which the attorney-client privilege and work-product doctrines plainly apply in the manner properly asserted by the defendant in this case.

### C. Defendant Has Not Waived the Attorney-Client Privilege

We also do not find persuasive the plaintiff's argument that the defendant has entirely waived the attorney-client privilege as a natural consequence of asserting affirmative defenses that its conduct was reasonable, in compliance with applicable Pennsylvania law and regulations, and in accordance with industry standards, customs, and practice in the investigation and adjustment of insurance claims. In support of this argument, the plaintiff relies on a single unpublished decision from Judge Munley of the Middle District of Pennsylvania, in which that court found that the insurer that was defending against a bad faith claim by asserting that the insurer

complied with the laws and engaged in appropriate conduct had, in effect, defended its conduct on the advice of counsel. Having so found in that case, the court concluded that the defendant's affirmative defense effectively waived the privilege. See Jones v. Nationwide Ins. Co., Civ. A. No. 3:98-CV2108, 2000 U.S. Dist. LEXIS 18823, 2000 WL 1231402 (M.D. Pa. July 20, 2000) (Munley, J.).

Essentially, even though the defendant in the instant case has not, in fact, specifically pled that it relied upon the advice of counsel, and asserted this precise defense to the claims in this case, the plaintiff argues that we should nevertheless follow Jones and conclude that the plaintiff should obtain unchecked discovery of any document in which the advice of counsel is potentially at issue simply because the defendant has defended its conduct as lawful, in compliance with state regulations and in accord with accepted industry practices. Assuming for the point of argument that Jones stands for such a broad proposition of law, we decline to find it applicable in this case. Instead, we find persuasive another district court's reasoning that merely asserting a defense that the defendant complied with the law is not tantamount to asserting an "advice of counsel" defense that might result in a broad waiver of the privilege.

In George v. Wausau Insurance Company, Civ. A. No. 99-CV-6130, 2000 U.S. Dist. LEXIS 16813, at *8, 2000 WL 276915 (E.D. Pa. March 13, 2000), the district

court found language similar to that set forth in the instant defendant's answer and affirmative defenses did not constitute an "advice of counsel" defense that resulted in the forfeiture of the attorney-client privilege:

> Advice of counsel, . . . is not in issue simply because it is relevant or because the lawyer's advice affected the client's state of mind with respect to a relevant matter. Rhone-Poulenc [Rorer, Inc. v. Home Indemnity Co., 32 F.3d 851, 863 (3d Cir. 1994)]. Rather, advice of counsel is raised only when the client asserts a claim or defense and attempts to prove that claim or defense by disclosing or describing an attorney-client communication. Id. This may occur when the party asserts reliance on the advice of counsel as an affirmative defense. Id. Courts rely on the language of the asserted affirmative defenses and the nature of the causes of action raised in the suit when determining waiver of the privilege. Id.

Other courts are in accord. See, e.g., Sayre Enters. v. Allstate Ins. Co., Civ. A. No. 5:06cv00036, 2006 U.S. Dist. LEXIS 89097, *11 (W.D. Va. Dec. 11, 2006) (following George, and expressly declining to follow Jones); McCrink v. Peoples Benefit Life Ins. Co., Civ. A. No. 2:04CV01068, 2004 U.S. Dist. LEXIS 23990, at *8, 2004 WL 2743420 (E.D. Pa. Nov. 30, 2004); Quaciari v. Allstate Ins. Co., Civ. A. No. 97-2028, 1997 U.S. Dist. LEXIS 13834, 1997 WL 570921, at *1 (E.D. Pa. Sept. 3, 1997) (attorney-client privilege applies to communications between insurance company and in-house counsel concerning claim that later becomes basis for bad-faith litigation); Fidelity & Deposit Co. v. McCulloch, 168 F.R.D. 516, 520 (E.D. Pa. 1996). "By preventing a naked allegation of bad faith from eviscerating the attorney-

14

client privilege, these courts preserve the attorney-client privilege, and the public and private interests that the attorney-client privilege serves, in the context of insurance litigation." McCrink, Civ. A. No. 2:04CV01068, 2004 U.S. Dist. LEXIS 23990, at *8, 2004 WL 2743420. We are persuaded by the reasoning in these decisions, and similarly agree that in this case the defendant's general defense that it conducted itself lawfully does not negate its ability to protect from disclosure confidential attorney-client communications. Accordingly, we do not embrace the plaintiff's argument that the defendant has waived the attorney-client privilege in this case with respect to the documents that are the subject of the instant dispute.

### III. CONCLUSION

Accordingly, for the foregoing reasons, and following our *in camera* review of the documents that have been withheld from production, IT IS HEREBY ORDERED THAT the defendants shall not be required to produce the disputed documents identified on the privilege log provided to the court and the plaintiff in this case.[2]

---

[2] It appears that a related dispute may continue to exist with respect to the plaintiff's request for the defendant to produce a claims manual or a related document – a request that the defendant has construed as "incomprehensible." (Doc. 28, at 9.). On May 14, 2013, the plaintiff again wrote to the court requesting that documents responsive to this request be ordered produced. (Doc. 30.) Likewise, after the parties filed briefs regarding the plaintiff's requests for the production of documents, and the defendant's objections, the plaintiff wrote to the

>                                   */s/ Martin C. Carlson*
>                                   Martin C. Carlson
>                                   United States Magistrate Judge

Dated: May 22, 2013

---

court to raise an unrelated dispute regarding the defendant's objections to interrogatories. (Doc. 29.) We have scheduled a telephone conference with the parties on May 22, 2013, to address these latest discovery disputes, which we anticipate may be resolved without the need for further briefing. However, the nature of this latest dispute underscores the observation we made at the outset of this opinion, that the parties should endeavor to find common ground with respect to their discovery disputes, and to focus their energies on addressing, and resolving, the plaintiff's pending claim regarding insurance coverage for serious and disabling personal injuries that occurred more than five years ago.