**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERRY WALTER,** | : | **Civil No. 4:12-CV-346** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **TRAVELERS PERSONAL** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

This is an insurance dispute between Terry Walter and Travelers Personal

Insurance Company.   Although the lawsuit at one time included claims relating to

Travelers' alleged refusal to provide underinsured motorist (UIM) coverage to

Walter, that claim has now been settled by the parties and all that remains is Walter's

claim that Travelers acted in bad faith in investigating Walter's claims.[1]   Walter's

bad-faith claim is predicated largely on his contention that Travelers conducted a

---

[1] In Counts II and III of the complaint, Walter has included claims based on his contention that Travelers violated Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL) by mishandling his UIM claim, but as will be discussed, Walter misplaces this claim because the statutes he claims were violated deal with first-party medical benefits, not UIM claims.   Furthermore, Travelers paid the first-party medical benefit under Walter's policy within a month of receiving notice of the claim, and the parties have settled the UIM claim.

1

dilatory and meandering investigation into his claim, despite having had sufficient information to evaluate the claim and make a coverage decision, which Walter argues was obvious given the severity of the injuries he suffered.

Walter's bad-faith claim is now being challenged by Travelers' pending motion for summary judgment.   (Doc. 71.)   The parties engaged in substantial and often contentious discovery in this action, and following that process and an arbitration of Walter's breach of contract claim that resulted in a settlement his UIM claim, Travelers moved for summary judgment on the remaining bad faith claims. Travelers has submitted a set of exhibits, and an uncontested factual record, in support of its position that the claim in this case was unusual and warranted a careful investigation, which suffered from a number of delays that cannot be attributed to the insurer.

In support of this position, which it has maintained throughout this litigation, Travelers highlights a unique combination of salient issues that justified its investigation into several unresolved issues, including the extent of other primary insurance coverage that may have been available, the extent of Walter's injuries relative to the amount of primary insurance available to him under another policy, and Walter's own potential culpability in the accident that resulted in him suffering serious bodily injury.   Travelers notes that in many instances, Walter or his counsel

bore some responsibility for the delay in the claims process, and even where fault cannot be attributed to the claimant, Travelers notes that its own investigation was appropriate and subject to delays that were no fault of the insurer and, therefore, should not be found to constitute bad faith.   Travelers further notes that the undisputed record reveals that Walter settled his claims against the principal insurer of the vehicle that caused his injuries, Erie Insurance Company, for less than half of the policy limits, which Travelers argues provides at least some support for its position that its secondary liability for Walter's injuries was far from obvious. Furthermore, Travelers notes that an arbitrator concluded that Walter bore 1/3 responsibility for the accident, which Travelers argues substantiates its position that it had a reasonable basis to question whether Walter would even have a viable claim, since some evidence suggested that Walter might bear a substantial proportion of the responsibility for causing the accident and his own injuries due to arguably unlawful conduct.   Additionally, Travelers points to an ongoing police investigation, a more than three-year delay in obtaining relevant video evidence of the accident, and incomplete medical records as providing further justification for the delays in the claims process.   In addition to this evidence, Travelers argues that Walter has failed in this litigation to develop a factual record that could conceivably sustain his burden of proving by clear and convincing evidence that Travelers acted in bad faith in

investigating Walter's UIM claim, and, therefore, submits that summary judgment is now appropriate.

Upon consideration of the parties' briefs and the evidence that Travelers has submitted – which is substantially undisputed – the Court finds insufficient evidence to support Walter's bad-faith claim, and concludes that Travelers is entitled to summary judgment on this claim and Walter's misplaced MVFRL claims in Counts II and III.   Furthermore, the Court finds unpersuasive the plaintiff's insistence that he is incapable of responding to the defendant's motion because he has been deprived of necessary discovery, and the Court finds counsel's affidavit in support of this assertion to be inadequate.   Accordingly, Traveler's motion for summary judgment will be granted in its entirety and the case will be marked closed.

## II.   <u>BACKGROUND</u>

The background to this memorandum and, indeed, to this litigation is largely undisputed.   This is itself somewhat surprising, given the vigor with which this action had been initially litigated in this Court, and prior to the litigation having been filed when the plaintiff was aggressively pursuing his claim and disputing his version of events with Travelers.   Nevertheless, following resolution of the underlying coverage claim through arbitration, the litigation regarding Travelers' alleged bad faith largely lost its drive, focus and momentum.   The absence of any

real contest regarding Travelers' version of the factual events, and the absence of a counterstatement of facts, renders those factual averments to be deemed undisputed except where the Court can perceive an actual dispute exists.

At all times relevant to this action, the plaintiff was the named insured on a motor vehicle insurance policy issued by Travelers, Policy No. 977883349 (the "policy"), which provided for UIM benefits with applicable policy limits of $100,000 for each person and $300,000 for each incident.   (Doc. 1, Compl., ¶¶ 6, 7; Doc. 71, Appendix, Ex. 1.)   The policy provides, in pertinent part, "We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of either an 'uninsured motor vehicle' or an 'underinsured motor vehicle' . . . ." (Doc. 71, Appendix, Ex. 1.)   The UM/UIM endorsement to the policy provides:

> A.     If we and an "insured" do not agree.
>
> 1.     Whether the owner or operator of the "uninsured motor vehicle" or "underinsured motor vehicle" is legally liable to that "insured" for "bodily injury" sustained and caused by an accident; or
>
> 2.     The amount of the damages sustained by the "insured";
>
> Either party may make a written demand for arbitration.

(Id.)

On May 4, 2008, the plaintiff and another individual were using a 1993 Ford F450 flatbed wrecker to deliver cargo at the Stoneroad Iron and Metal Scrapyard in Northumberland County, Pennsylvania. The plaintiff had been using the rollback truck, but it was owned by Route 15 Auto Sales, which had apparently sought its return. According to a police report, on the date of the accident a man named McKinnel Morton entered the Ford and slid over to the driver's seat and began to drive away as part of an effort to repossess the vehicle. The parties have always disputed what happened next, but there is no dispute that it ended very badly for Mr. Walter. The police report contained some indication that Mr. Walter jumped onto the vehicle in an effort to stop Mr. Morton from making off with it; for his part, Walter has maintained that he ran after the vehicle, but did not jump onto it. There have always been conflicts regarding what exactly happened after Morton took the wheel. (*Id.*, Exs. 3, 19, 27.) In either case, there is no dispute that Walter was run over by the left rear wheel of the vehicle and sustained very serious bodily injury, including a broken pelvis, a torn urethra and other injuries to his midsection. He was immediately transported to a nearby hospital for medical care. (*Id.*, Exs. 3, 27.)

The truck's owner, Route 15 Auto Sales, was insured by Erie Insurance. Erie initially denied coverage under its policy, asserting that Walter bore responsibility for the incident. However, following litigation Walter and Erie settled his claim for

$240,000 on a policy that had limits of $500,000 per incident.

Walter put Travelers on notice of his claims via a Notice of Loss dated May 27, 2008, and a day later a Travelers' claim professional, Paula Kosh, contacted Walter's counsel by letter and requested Walter's medical and employment records. (*Id.*, Ex. 5, 6.)   Less than a month later, Travelers paid Walter the $5,000 first-party medical benefit available under his policy.   (Doc., 1, ¶ 9; Doc. 71, Appendix, Ex. 2, 9.)   Walter also requested payment of the full $100,000 UIM benefits available under the policy.   (Doc. 1, ¶ 8.)   Because the plaintiff was demanding the UIM policy limits, and because Route 15 Auto Sales' liability limits under its Erie policy were $500,000, the plaintiff needed to show that his damages totaled at least $600,000 in order to receive the full policy limits.   (Doc. 71, Appendix, Ex. 1.)

The record reflects that Travelers undertook an investigation into the claim and learned that there were various accounts about the cause of the accident, including some indication that the plaintiff may have caused or substantially contributed to the injuries by negligently jumping onto, or hanging onto, the side of the truck as it drove off.   (*Id.*, Ex. 19.)   In addition to the insurance investigation that was undertaken, there was also a criminal investigation into the incident, which delayed matters; evidence further reveals that it took more than three years until Travelers obtained video surveillance footage of the accident.   (*Id.*, Exs. 20, 21, 22.)

During its investigation, Travelers obtained an expert report from a biomechanical engineer, Dr. Ronald Fijalkowski, who examined this video surveillance and on March 9, 2012, opined to a reasonable degree of scientific certainty that the plaintiff was riding on the driver's side of the rollback truck and was run over by the left rear tire of the vehicle.  (*Id*., Ex. 3.)   The record contains no countervailing expert testimony to rebut Dr. Fijalkowski's conclusions, or to support Walter's assertion that he was not riding on the vehicle before his injury.

Walter filed this action on February 22, 2012, alleging a claim for statutory bad faith, and violations of 75 P.S. §§ 1716 and 1798 – which are sections of the MVFRL pertaining to first-party medical claims, not UIM claims.  The plaintiff attempted to amend his complaint to include a claim for breach of contract, but that claim was subsequently stricken by the Court because the plaintiff had not obtained leave to file an amended complaint.

While this litigation was ongoing, the parties bifurcated the plaintiff's UIM and bad-faith claim, and the parties arbitrated the plaintiff's UIM claim before a panel of three arbitrators.  (*Id.*, Ex. 4.)   As part of that arbitration, it was determined that the plaintiff was 1/3 negligent for his acts that led to the injuries. (*Id.*)   The parties subsequently settled the UIM claim after engaging in additional fact and expert discovery.

Following several extensions and revisions to the case-management schedule at the plaintiff's request, the defendant filed its motion for summary judgment on August 15, 2016.  (Doc. 71.)  On August 18, 2016, the parties consented to the undersigned's jurisdiction over this action for all matters through and including trial and any post-trial motions.   The plaintiff was ordered to file a responsive brief, and counterstatement of material facts, by September 23, 2016.  (Doc. 78.)   Five days after that deadline, the plaintiff filed a letter with the Court requesting additional time to prepare his response, citing as justification the fact that his lawyer was currently engaged in a political campaign for the position of District Attorney in Tompkins County, New York.   (Doc. 79.)   The Court agreed to a limited extension, and ordered that a response be filed by October 11, 2016.  (Doc. 81.)  On October 11, 2016, the plaintiff filed his brief in opposition, along with an affidavit from counsel arguing that he could not prepare a complete response to the motion because he had not received necessary discovery.   (Docs. 82, 83.)  Travelers filed a reply to these papers on October 25, 2016.  (Doc. 85.)

## III.   STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).  For purposes of Rule 56, a fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 412 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *Id.*  (quoting *Anderson*, 477 U.S. at 248-49).

Accordingly, in support of a motion for summary judgment, the moving party must show that if the evidence of record were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof.  *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  Provided the moving party has satisfied this burden, "its opponent must do more than simply show that

10

there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).   Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings.   *See Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); *see also* Fed. R. Civ. P. 56 (c).

In adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true.   *Id.*   Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.   *Id.* at 252; *see also Big Apple BMW*, 974 F.2d at 1363.   In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent
> need not match, item for item, each piece of evidence
> proffered by the movant.   In practical terms, if the
> opponent has exceeded the "mere scintilla" threshold and

11

> has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.   It thus remains the province of the factfinder to ascertain the believability and weight of the evidence.

*Id.*   In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *NAACP v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).

## IV.   **DISCUSSION**

### A.    **Plaintiff's Bad-Faith Claim Fails on its Merits**

Walter's principal remaining claim in this action is that Travelers violated Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371, by delaying its investigation and adjustment of his UIM claim.   Walter has asserted that Travelers' bad faith was evidenced by the insurer failing to act promptly on the plaintiffs' claims, conducting a slow and meandering investigation into an accident that involved serious and obvious injuries, failing to conduct a reasonable investigation and failing to pay the $100,000 policy limits as demanded.   The evidence shows otherwise.

Under Pennsylvania law, "[i]n an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured," the court can award the claimant interest, punitive damages, court costs and attorney fees. 42 Pa. Cons. Stat. Ann. § 8371. The Third Circuit has explained "bad faith" in this context as follows:

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). Although an insurer's conduct need not be fraudulent to rise to the level of bad faith, "mere negligence or bad judgment is not bad faith." *Id.* (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. 2004). The insured bears the burden of showing that "the insurer breached its duty of good faith through some motive of self-interest or ill will." *Id.* "To recover for bad faith, 'a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim.'" *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 522 (3d Cir. 2012) (quoting *Condio v. Erie Ins. Exch.*, 899 A.2d 1136,

1143 (Pa. Super. Ct. 2006)).

The defendant can defeat a plaintiff's claim by demonstrating that it had a reasonable basis to deny the claim. *Id.* at 523. Furthermore, "[a]t the summary judgment stage, the insured's burden in opposing a summary judgment motion brought by the insurer is 'commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial.' " *Babayan*, 430 F.3d at 137 (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Verdetto v. State Farm Fire and Cas. Co.*, 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011) ("[I]n order to defeat a motion for summary judgment, a plaintiff must show that a jury could find by 'the stringent level of clear and convincing evidence' that the insurer lacked a reasonable basis for its handling of the claim and that it recklessly disregarded its unreasonableness."), *aff'd* 510 F. App'x 209 (3d Cir. 2013); *McCabe v. State Farm Mut. Auto. Ins. Co.*, 36 F. Supp. 2d 666, 669 (E.D. Pa. 1999).

It is not bad faith for an insurance company to "conduct a thorough investigation into a questionable claim." *Babayan*, 430 F.3d at 138. Accordingly, courts applying Pennsylvania law have found that an insurer satisfies its burden by "showing 'a reasonable basis' for investigating a claim, and is thus entitled to

judgment as a matter of law, where it demonstrates the existence of certain 'red flags' which prompted it to further investigate an insured's claim."   *Verdetto*, 837 F. Supp. 2d at 484 (quoting *Brown v. Liberty Mut. Ins. Group*, 2001 U.S. Dist. LEXIS 781, *8-11, 2001 WL 87741, *3-4 (E.D. Pa. Jan. 30, 2001)).

Walter's chief argument throughout this action has been that Travelers engaged in an inexcusably dilatory investigation into the UIM claim without any reasonable basis, but upon consideration the undisputed factual record amply supports Travelers' defense that certain "red flags" existed that justified it undertaking a thorough investigation into the cause of the accident, the extent of the plaintiff's injuries, and the insurer's potential liability for the plaintiff's claim.   The record reveals that Travelers was notified of the accident on May 4, 2008, and received a notice of loss on May 28, 2008.   The very next day, Travelers contacted the plaintiff's lawyer and requested that he furnish the insurer with copies of Walter's medical and employment records.   (Doc. 71, Exs. 5, 6.)   Travelers also paid the $5,000 first-party medical benefit available under the policy within a month of being presented with the claim.

Notwithstanding the fact that there were delays in the investigation, the record shows that Travelers' representatives were regularly in touch with the plaintiff's lawyer and requested updated medical and employment records, tax returns, wage

and salary verifications, relevant documents from the Erie policy that covered the vehicle involved in the accident, transcripts from the criminal proceedings that followed the incident, and other documentation needed to investigate what was far from a clear-cut accident.  (*Id.*, Exs. 8-25.)   Much of this record evidence reflects that Travelers followed up with the plaintiff regarding the requests, and often went for long periods without receiving any response to these inquiries.  (*Id.*)   Thus, the uncontested evidence shows that at least some of the delay in this case was attributable to the plaintiff.   Such delay cannot form the basis of a bad faith claim.

Aside from these delays, the record also shows that delays stemmed from the criminal investigation and prosecution that ensued following the accident.   There is nothing in the record to dispute Travelers' assertion that because of the criminal proceedings, the insurer was unable for a considerable period to obtain recorded statements from key witnesses, some of whom had apparently recounted a materially different version of events than that offered by Walter, including the assertion that Walter contributed to his own injuries by jumping aboard the rollback truck after it had been repossessed.   Resolution of this criminal case was a reasonable prerequisite to an informed assessment of Walter's UIM claim.

During this time, Erie, the primary insurer, was also investigating the claim, including to determine whether it had any liability, which Travelers maintains –

16

without any real contradiction by the plaintiff – contributed to delays. Once again, it was reasonable for Traveler's to await a determination regarding whether Walter's injuries exceeded the $500,000 primary insurance coverage thresholds under the Erie policy, before resolving its UIM claim. Indeed, the prudence of this approach was underscored by the fact that ultimately the Erie claim was settled for less than half of the value of the policy limits.

Moreover, as Traveler's received and reviewed evidence, that evidence raised further questions concerning Walter's claim. There is no dispute that Travelers did not receive video footage from the accident until January 2012, which was over three years after the accident occurred, despite multiple requests to the plaintiff's attorney that the footage was necessary for Travelers' investigation. (Doc. 71, Exs. 20, 21, 22.) The video footage was relevant to the investigation, and was examined by a biomechanical engineer who opined after viewing it that Walter had indeed jumped onto the moving vehicle, leading to the injuries. Thus, the video evidence provided some factual support for a defense of this UIM claim.

The plaintiff filed this action approximately a month after Travelers first obtained the video footage. After the action was initiated, Travelers continued to investigate the claim, and the parties engaged in substantial fact discovery, including the exchange of documents and the taking of depositions that were necessitated by

the litigation being filed. The plaintiff has offered no evidence to support his assertion that these delays were unjustified or unreasonable and, indeed, has not alleged that any delays that attended the pendency of this lawsuit were evidence of bad faith.

During this litigation, the parties submitted the plaintiff's UIM claim for arbitration in accordance with the terms of their policy. The results of that arbitration further underscored the factual ambiguities in this case, ambiguities which justified Traveler's measured approach. As part of that arbitration process a panel of three arbitrators concluded that the plaintiff was 1/3 causally negligent in the accident, and that the tortfeasor was 2/3 negligent. (*Id.*, Ex. 4.) Travelers maintains, and Walter does not really dispute, that this fact supports the insurer's position that it had a reasonable basis to investigate Walter's claim and the circumstances that led to the accident, including Walter's potential responsibility. We agree.

Walter has also consistently maintained throughout these proceedings that Travelers also exhibited bad faith by failing to pay the policy limits immediately, apparently because the extent of Walter's injuries was such that no reasonable insurer would have believed that there was any basis to conclude that the full policy limits might not be warranted. Yet, the record shows that Travelers had several

reasons for not immediately paying the claim as demanded.   As an initial matter, and as noted above, there were multiple differing reports regarding the cause of the accident, including whether Walter had violated Pennsylvania motor vehicle law by climbing aboard the outside of the truck as it drove away.

Aside from the fact that a criminal investigation into the incident was being undertaken that gave some justification for the insurer not immediately paying the full policy limits on the claim, the fact that Walter's claim against Erie as the primary insurer was not yet resolved gave further justification for Travelers' cautious approach.   The relevant policy language in the Travelers policy provides that the insurer would "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator or either an 'uninsured motor vehicle' or an 'underinsured motor vehicle' . . . ."   (Doc. 71, Ex. 1.)   As Travelers' cogently argues, the threshold unsettled issue was whether Walter was even entitled to recover compensatory damages from Erie in the first place, and Travelers was not empowered to make that initial decision.

Furthermore, the fact that a panel of arbitrators concluded that Walter was 1/3 responsible for the accident offers support for the insurer's position that it was not immediately clear whether Walter would even be entitled to recover in the first place.   This fact is then coupled with the expert report of a biomechanical engineer

who concluded that Walter must have jumped onto the moving truck, which in turn led to his injuries.   The issue of liability was not settled, and far from the cut-and-dried issue that Walter has asserted in this case.   Walter has also not offered any expert evidence that would contradict that of Dr. Fijalkowski, which supports Travelers' earlier to decision to investigate and delay paying the full policy limits as demanded.   As Travelers notes, courts have routinely found that it is reasonable for an insurance company to rely on expert opinion in its investigation into claims and accidents, including in cases where an insurer is charged with breaching its contract or engaging in bad faith.   *See, e.g., Moran Indus., Inc. v. The Netherlands Insurance Co.*, No. 12-cv-1435, 2014 U.S. Dist. LEXIS 20081 (M.D. Pa. Feb. 19, 2014) (insurer reasonably relied on expert opinion of architect and engineer); *Kojsza v. Scottsdale Ins. Co.*, 992 F. Supp. 2d 403 (M.D. Pa. 2014); *Blaylock v. Allstate Ins. Co.*, No. 06-cv-1456, 2008 U.S. Dist. LEXIS 1098 (M.D. Pa. Jan. 7, 2008) (granting summary judgment to insurer in bad faith action where the insurer reasonably relied on opinion of a handwriting expert).   Walter has offered nothing to suggest that Travelers was not similarly entitled to rely on expert guidance as part of its claims analysis.

In addition, contrary to Walter's repeated argument that Travelers should have immediately paid the full policy limits of $100,000 on his UIM claim, there is

evidence in the record that substantially supports Travelers' position that its obligation to pay this amount was always in doubt.  This is because the primary insurer, Erie, had a policy with limits of $500,000, and Walter was claiming an additional $100,000 in UIM coverage.  Walter was, therefore, in effect, claiming that he had injuries that totaled at least $600,000.   Travelers made multiple requests of Walter and his counsel for medical records to support this substantial claim, and the record reveals that Travelers continued to review these records as they were made available.  (Doc. 71, Exs. 8-25.)   Ultimately, Walter settled his claim with Erie for $240,000, less than half of the policy limits under that policy; this fact provides considerable support for Travelers' view that Walter's damages claim may not manifestly have been more than $600,000 and, indeed may have been far lower.

Against this record evidence, Walter has essentially offered nothing of substance.  Indeed, on October 11, 2016, after obtaining continuances to respond, the plaintiff filed two documents, one of which was an affidavit from counsel and the other purportedly a brief in opposition, but both essentially requesting that the motion be denied so that the plaintiff can engage in still further discovery.   These documents are little more than belated motions to compel discovery under the guise of a Rule 56(d) declaration made months after discovery closed and more than four years after the case was filed.   They are unpersuasive and provide no basis to deny

the motion or even to delay its consideration.

Although the parties have repeatedly litigated discovery issues throughout this action, Walter now contends that some of Travelers' prior discovery responses, furnished months or years ago, were inappropriate and he now contends that he may need to take additional depositions of the claims adjustor and of a corporate designee to explore the insurer's internal procedures for claims handling.   (Doc. 82.) Notably, Walter does not explain in a persuasive fashion why this discovery was not undertaken in a timely manner during the prior four years of this litigation.   This largely unsupported argument is, at this late juncture, little more than a last-ditch effort to delay these proceedings under the rubric of having failed to obtain discovery months ago, and is not persuasive.

Less persuasive still is Walter's contention that in May 2013, he objected to one of the undersigned's early rulings in this case where the Court determined that Travelers was not required to produce certain disputed documents.   (Doc. 82, citing Doc. 32.)   According to Walter, Judge Jones has yet to rule on his three and one-half year old objection, and this unresolved matter should compel the Court to deny Travelers' motion or permit the plaintiff to engage in still further discovery into the claims in this case.

Walter makes these arguments through a Rule 56(d) affidavit, which is a procedural vehicle that parties may use in some cases when a party has moved for summary judgment but the non-moving party is unable to respond because it has been unable to take necessary discovery.   The rule specifically provides as follows:

> (d)   When Facts Are Unavailable to the Nonmovant.   If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)   defer considering the motion or deny it;
>
> (2)   allow time to obtain affidavits or declarations or to
>
> take discovery; or
>
> (3)   issue any other appropriate order.

Fed. R. Civ. P. 56(d).   However, in order to invoke a right to relief under this rule, a party must identify with specificity (1) what information is sought; (2) how, if discovered, it would preclude summary judgment; and (3) why the information was not previously obtained.   *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 140 (3d Cir. 1988)).

In this case, Walter has identified the discovery that he believes he needs to contest the defendants' motion, but he has not persuasively argued as to how this information would preclude summary judgment, nor has he persuasively explained why this information was not obtained previously.   Although Walter built this case

23

around his contention that Travelers unreasonably delayed its investigation and decision on Walter's claim, he now contends that without access to internal claims handling procedures he cannot effectively respond to Travelers' supported arguments as to the reasons justifying the investigation and cautious approach to Walter's demand for the full policy limits.  Walter's assertion is not carefully tailored, and appears to be little more than an attempt to reopen discovery – after years of litigation – to pursue a new and speculative line of argument rather than to contest Travelers' motion on its merits and explain why he is unable to respond to the arguments that Travelers has made.

Much of Walter's arguments relate to Travelers' objections to some of the discovery requests made early in this case, but in doing so Walter ignores the fact that this discovery dispute was effectively put to rest more than three years ago when the undersigned ruled that Travelers' objections and scope of production were proper.  Walter attempts to evade this fact by arguing that he had objected to this Court's ruling in May 2013, and that Judge Jones never ruled on that objection. Prior to filing his opposition to the defendants' motion in October of this year, the plaintiff had never previously raised this issue with the Court, or indicated that there were outstanding discovery matters that needed to be resolved.  Instead, the issue was simply dropped.

This is significant, in part, because the parties subsequently consented to the undersigned's jurisdiction over this action, and the action was thereafter reassigned to this Court for all further proceedings, including trial, entry of final judgment, and all post-trial proceedings.   (Doc. 74.)   The plaintiff's belated argument that there is still an outstanding matter that requires Judge Jones to rule is simply without any merit, since the parties consented to have the case referred to the undersigned in August of this year.   This Court would have no obligation to consider an objection that the plaintiff filed with Judge Jones in 2013 or, in fact, at any point in this litigation since that objection was lodged with the district court and required no involvement by the undersigned.   The plaintiff's attempt to use this unresolved objection that is more than three years old, and which was filed prior to the case being reassigned to this Court after it ruled on the discovery dispute at issue, does not supply a compelling basis under Rule 56(d) to delay resolution of the defendant's motion.

Moreover, the more than three-year delay in even bringing this issue to the Court's attention is relevant to the third consideration – namely, why the information sought was not previously obtained.   Courts that have considered this issue have generally required the nonmovant to "affirmatively demonstrate, with specificity, diligent efforts on his or her part and unusual circumstances which have frustrated

those efforts." *Banks v. City of Phila.*, 309 F.R.D. 287, 292 (E.D. Pa. 2015) (quoting *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986)).   In this regard, "[a] request for relief under Rule 56(d) is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery." *Id.* Rule 56(d) is designed to prevent the premature entry of summary judgment in cases where the nonmoving party has not had an opportunity to take full discovery, "not . . . to protect those who have had an opportunity to complete discovery, but who failed to do so by their own lack of diligence." *Id.*

This is, quite simply, not a case where a defendant has moved for summary judgment prematurely, without the plaintiff having had a full opportunity to engage in discovery.   To the contrary, this is a civil action that was filed in early 2012, has been subject to extensive discovery by the parties (including several disputes regarding the same), and resulted in the defendant moving for summary judgment in August 2016 – more than four years after the case was initiated.   The fact that the plaintiff is dissatisfied with certain rulings that were made previously in this case does not remotely suggest that the plaintiff has not had a fair and full opportunity to take discovery from the defendant, and to seek judicial intervention in cases where there has been a dispute over the scope of that discovery.   That fact is not altered by the plaintiff's assertion that there remains outstanding a three year-old objection that

was filed with a judicial officer who is no longer involved in this case, and which was never brought to the undersigned's attention as an unresolved matter until October 11, 2016 – months after discovery closed.   Similarly, the plaintiff's belated suggestion that he wishes to take one or two additional depositions is unpersuasive, since he never explains why these depositions could not have been taken during the discovery period that was set long ago in this case, and which expired in August of this year.

Where the nonmoving party has had a fair opportunity to engage in discovery, and where the nonmoving party has failed to specify plausibly why the discovery it seeks was not previously obtained, or has otherwise failed to explain how that discovery is necessary to oppose a motion for summary judgment, a rule 56(d) motion may be denied.   *See, e.g., Stough v. Conductive Techs., Inc.*, 613 F. App'x 145 (3d Cir. 2015) (affirming denial of a Rule 56(d) motion where the plaintiff did not adequately explain why the discovery materials had not been obtained previously); *Longo v. Hanger Prosthetics & Orthotics, Inc.*, No. 12-cv-2445, 2015 U.S. Dist. LEXIS 25420 (M.D. Pa. Mar. 3, 2015); *Snow v. United States*, No. 13-cv-0789, 2014 U.S. Dist. LEXIS 124998 (M.D. Pa. Aug. 11, 2014).[2]   This is a

---

2 With respect to the plaintiff's second set of discovery requests, Travelers responded to the discovery on March 8, 2016.   (Doc. 82.)   Discovery in the case closed on August 15, 2016 – having previously been extended.   (Doc. 70.)   The

case where the plaintiff is improperly attempting to utilize Rule 56(d) in order to forestall consideration of the defendant's motion for summary judgment, and he has failed to make the showing necessary for such relief.[3]

In summary, Travelers has presented unrebutted evidence that the insurer had ample justification for conducting a thorough investigation into Walter's UIM claim, and that the investigation was hampered by delays that were not entirely attributable to the insurer but were affected by a criminal investigation, delayed production of necessary evidence, and by Walter's own dilatory responses in some instances. Travelers has also presented unrebutted evidence to support its position that Walter, who bears the burden of proving a bad-faith claim through clear and convincing evidence has, in the end, offered no evidence in support of his claim, and his belated effort to compel even more discovery after having had sufficient time and

---

plaintiff had five months in which to raise an issue with respect to the defendant's production, but never did so. The plaintiff took no action of any kind to contest the adequacy of the defendant's production until October 11, 2016. This delay was unreasonable and undermines the plaintiff's belated Rule 56(d) argument, since he did not diligently pursue this issue but allowed it to remain silent until raising it in his response to the defendant's motion.

[3] The Court also notes that much of the plaintiff's Rule 56(d) argument set forth in counsel's declaration tracks the very arguments that the plaintiff previously made in 2013 in an effort to compel discovery, which the Court ruled on in May 2013. (Doc. 32.) We have carefully considered these belated objections to our May 2013 discovery ruling and find them unpersuasive. Therefore, even if this issue had been raised in a timely manner, it fails on its merits.

opportunity to develop evidence over more than four years of litigation is unpersuasive and inadequate to defeat Travelers' motion for summary judgment.

### B.     Plaintiff's Claim Under 75 P.S. §§ 1716 and 1798 are Without Merit

In Counts II and III of the complaint, the plaintiff has brought claims under Section B of Pennsylvania's Motor Vehicle Code, 75 P.S. §§ 1716 and 1798 alleging that Travelers unlawfully refused to pay UIM benefits.   Travelers argues in response that these claims are without merit because the claims in question are brought under Section B of the MVFRL which governs first-party medical benefits, not UIM coverage.   Indeed, there is an entirely separate section of the MVFRL – Section C – that addresses UIM and UM coverage issues, which are not implicated in this case.   Thus, Travelers persuasively contends that these claims are simply misplaced, since they seek damages for failing to pay UIM benefits timely but rely on a statute that governs payment of first-party medical benefit claims. Furthermore, Travelers notes that it is undisputed that it paid Walter the $5,000 first-party medical benefit in this case within a month of being notified of the claim, and since the statute in question concerns those very benefits, these two claims fail at the outset.   Finally, Travelers maintains that any claim that Walter may have had regarding payment of the UIM claim has since been rendered moot by the fact that the parties settled the claim after going through arbitration.

In his response, Walter has ignored Traveler's arguments regarding both of these claims, and has not even tied his Rule 56(d) argument to these claims.   He has not explained how his claims regarding Traveler's handling of his UIM claim may be predicated upon statutory provisions in the Motor Vehicle Financial Responsibility Law that pertain to entirely separate insurance coverage – and to coverage that was sought, and paid, within one month of the claim being made in this case.   And he further ignores the fact that the parties entered into a mutual settlement regarding the UIM claims in this case, which are no longer part of this dispute.   In the absence of any legal authority to support Walter's theory under these provisions of the Motor Vehicle Financial Responsibility Law, and the undisputed fact that Travelers paid Walter's first-party benefits that he settled his UIM claim with Travelers, the Court finds that Travelers is entitled to summary judgment in its favor on Counts II and III as well.

## V.   **CONCLUSION**

For the foregoing reasons, Travelers' motion for summary judgment will be granted on all remaining claims in this case.   A separate order consistent with this memorandum opinion will issue separately.

*S/MARTIN C. CARLSON*
Martin C. Carlson
United States Magistrate Judge

Dated:   November 29, 2016